**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LEVANCE DUNHAM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:04-CV-0459-JOF |
| SGT. ADAIR, in his individual | : | |
| capacity and official capacity as a | : | |
| corrections officer with the | : | |
| East Point Police  Department, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the court on Defendants' motion for summary judgment [52-1].

**I.    Background**

**A.    Procedural History**

Plaintiff, Levance Dunham, filed suit against Defendants on February 17, 2004, pursuant to 42 U.S.C. § 1983 contending that his Fourth and Eighth Amendment rights were violated because he received inadequate medical care for a brown recluse spider bite while an inmate at the City of East Point jail.   Plaintiff also asserts state court claims of gross negligence, intentional infliction of emotional distress, and punitive damages.   Defendants

Adair, Elko, and Smith are sued in their individual and official capacities as corrections officers.  Plaintiff also sues the City of East Point.[1]

### B.    Facts

The facts are drawn from Defendants' statement of material undisputed facts. Unfortunately, Plaintiff did not comply with this court's Local Rules and did not respond to Defendants' statement.   Plaintiff makes numerous factual assertions concerning the chronology of events at the prison but does not point the court to any portion of his deposition which might support such assertions, nor does he provide any affidavit testimony.   This puts the court in the difficult position of having to search the record for support for Plaintiff's contentions.   In addition to Defendants' statement of material undisputed facts, the court has also reviewed Plaintiff's deposition and the deposition of Officer Franklin Phillips, taken by Plaintiff.

Plaintiff alleges he was bitten by a brown recluse spider on July 7, 2003, while incarcerated at the City of East Point Jail.  According to Plaintiff, he requested a sick call on July 8 and was refused by Defendant Adair.  He again requested a sick call on July 9, 2003, and was rejected.  Defendant Elko placed antibiotic ointment on the bite area.  On July 10, 2003, Plaintiff again requested treatment and was refused.  He claimed he had a fever and requested Tylenol and none was provided.  On July 11, 2003, Plaintiff requested a sick call.

---

[1]In its January 6, 2005 order, the court dismissed the East Point Police Department. Further, it appears that a "Sergeant Elko" has never been served or identified by the parties.

He was told that there was no doctor or nurse on duty and he would have to go to Grady Hospital, which Plaintiff requested to do.  The bite began to discharge pus and he was refused Tylenol.  On July 12, 2003, Plaintiff again requested treatment and was given antibiotic cream.  On July 13, 2003, the bite was still discharging pus, and Plaintiff requested a sick call which was rejected.  On July 14, 2003, Plaintiff still had a fever and could not eat.  His sick call request was refused.

On July 15, 2003, Emergency Medical Services was called to the jail and Plaintiff was transported to Grady Hospital.  (Although Plaintiff contends he was unable to move, the ambulance report makes no notation of this information and indicates that Plaintiff's vital signs were normal.)  *See* EMS Incident Report, Defendants' Mot. for S.J., Exh. B.  The Incident Report lists the "mode of response" as "non emergency."  *Id.*

At Grady Hospital, a General Evaluation was completed.  *See* Grady Hospital General Evaluation Form, Defendants' Mot. for S.J., Exh. D.  Plaintiff's temperature was listed as 38 degrees Celsius (or 100.4 Fahrenheit).  *Id.*  The treating physician diagnosed a spider bite with a possible underlying abscess.  *Id*.  He made an incision and drained a small amount of pus from the wound which was then dressed in a bandage.  *Id.*  He prescribed Motrin and Keflex. *Id.*

After he was released from jail, Plaintiff was treated by Dr. Daniel Beless of the Hyperbaric Physicians of Georgia at Crawford Long Hospital.   Dr. Beless testified that Plaintiff was not bitten by a brown recluse spider because there was no necrotic tissue present

3

when Plaintiff was treated at Grady Hospital. *See* Beless Aff., ¶¶ 7-8. Also, Plaintiff's wound contained pus which does not result from a brown recluse spider bite. *Id.*, ¶ 8. Even if Plaintiff had been bitten by a brown recluse spider, Dr. Beless testified that he "fell into the category of individuals who do not need any type of treatment from such a bite." *Id.* At the time Dr. Beless treated Plaintiff, about two weeks after Plaintiff's visit to Grady, "his wound was approximately three millimeters long and less than one millimeter wide. The only medical condition [Plaintiff] appeared to be suffering was a skin irritation from the tape that affixed the bandage." *Id.*, ¶ 6.

Franklin Carl Phillips was a detention officer at East Point Jail during the relevant time period. Officer Phillips testified that when he came in on evening shift, he gave Plaintiff peroxide to put on the bite and let him take a hot shower. *See* Phillips Depo., at 28. Plaintiff asked to be placed on sick call the next morning, and Officer Phillips did not think the situation was severe. *Id.* at 29. Officer Phillips could not remember the supervisor on shift at that time. *Id.* at 34-35. Sergeant Echols did call the EMTs when she saw the bite after about four or five days. *Id.* at 36. During those four or five days, Officer Phillips provided peroxide and hot cloths to Plaintiff as well as pain medication. *Id.* at 37-38. Officer Phillips continued to post notes for his supervisors concerning Plaintiff's condition. *Id.* at 40. Another officer was also cleaning the wound and putting bandages on it. *Id.* at 42.

### C.  Contentions

4

Defendants argue that Plaintiff's spider bite did not constitute a serious medical condition. Defendants further contend that they were not deliberately indifferent to Plaintiff's needs because they provided antibiotic cream, hot towels, pain medication, and hot showers for his bug bite. Ultimately, when Plaintiff developed a fever four to five days after being bit, he was transported to Grady Hospital for treatment. Defendants aver that Plaintiff did not proffer any evidence concerning policy or custom of the City of East Point, nor did Plaintiff proffer evidence from which a jury could conclude that Defendants were grossly negligent or intentionally inflicted emotional distress.

Plaintiff responds that he was bitten by a brown recluse spider and his requests to see medical personnel were refused. Plaintiff contends he eventually developed a fever. Finally, Plaintiff contends that the City of East Point is liable because it has a policy of not having a full time nurse on staff and leaving the treatment of prisoners to the discretion of correctional officers. Plaintiff argues that he had to get follow-up medical treatment and has permanent scarring in the area of the bite.

AO 72A
(Rev.8/82)

## II.   Discussion

### A.   Deliberate Indifference

In *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003), the court considered the claim of a prisoner who alleged that prison dental staff violated his Eighth Amendment rights under the U.S. Constitution by delaying eighteen months in providing him with dentures.[2]   The plaintiff alleged that his lack of teeth made it painful for him to eat hard foods and forced him to improvise a soft diet.   As a result, the plaintiff lost twenty pounds.   The plaintiff also experienced pain when his two lower teeth would slice into his upper gums and cause his gums to bleed.   The court noted that a prison official's "deliberate indifference to [the] serious medical needs of [a] prisoner[] constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."   *Id.* at 1243 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   However, the "inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain."   *Id.*; *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *McElligott v. Foley* 182 F.2d 1248, 1255 (11th Cir. 1999) (not every claim of inadequate medical treatment states a violation of the Eighth Amendment).

---

[2]Although a pretrial detainee's rights flow from the Fourteenth Amendment, the standard for deliberate indifference to medical needs is the same as set forth in cases analyzing a convicted prisoner's claims under the Eighth Amendment.   *See Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

6

> To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. . . . First, a plaintiff must set forth evidence of an objectively serious medical need. . . . Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need.

*Farrow*, 320 F.3d at 1243.   A "serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Id.* (quotation and citation omitted).   The medical need "must be one that, if left unattended, poses a substantial risk of serious harm."   *Id.*   Deliberate indifference has "three components:   (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Id.* at 1245-46 (quotation and citation omitted).

Delay in providing access to medical care can constitute an Eighth Amendment violation when the delay is an "unnecessary and wanton infliction of pain."   *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994) (citation omitted), *abrogated on other grounds*, *Hope v. Pelzer*, 536 U.S. 730 (2002).   Plaintiff must show harmful effects of the delay in treatment in order to establish deliberate indifference.   *Id.* at 1187-88.

As an initial matter, Plaintiff has proffered no evidence to support his speculative claim that he was bitten by a brown recluse spider.   The medical report from Grady Hospital shows a diagnosis of "spider bite," and the physician whom Plaintiff saw for follow-up treatment testified that Plaintiff did not suffer a brown recluse spider bite because there was no skin

7

AO 72A
(Rev.8/82)

necrosis at the bite site and because the bite emitted pus, which a brown recluse bite would not do. Thus, the only evidence before the court shows that Plaintiff suffered some kind of spider bite. It is far from clear that a spider bite constitutes a serious medical need. In fact, the most Plaintiff can show is that he suffered from minor discomfort and a fever.

In any event, even assuming Plaintiff has demonstrated a serious medical need, Plaintiff seems to argue that Defendants were deliberately indifferent to his medical needs because he did not get to see medical staff when he requested. However, testimony proffered by Plaintiff, himself, shows that he was given antibiotic cream, pain medication, and hot towels, and was permitted to take hot showers on several occasions in the days immediately following the spider bite. Plaintiff claims he developed a "raging fever" which was at its worst when he was finally taken to Grady. (The court notes that Plaintiff's intake temperature at Grady was 100.4 degrees.) Plaintiff was treated at Grady and released back to the jail.

Plaintiff could be arguing that there was a delay in his treatment. However, Plaintiff has not established any harmful effects that he suffered due to this alleged delay. In fact, it is difficult to discern any injury Plaintiff suffered at all, let alone injury attributable to a delay in treatment. Plaintiff claims he has a scar at the area of the bite. The physician who treated Plaintiff two weeks after he was seen at Grady testified that the only treatment he provided to Plaintiff was for skin irritation from the bandage used to cover the bite.

Plaintiff points to the deposition testimony of Officer Phillips to support his contentions. Officer Phillips testified that Sergeant Echols . . . "[s]he, you know, the thing

went and got so, you know, bite – the bite got so big she seen it. She sent him, well, to the EMTs. The EMTs said well, send him. And they – once the EMTs done evaluate him, you know – ." Phillips Depo., at 36. He also testified that Plaintiff "came to me, and he was saying what's going on. I said I informed the supervisor – I informed the supervisor and they is on it. You know, I keep telling them myself, you know, posting it up. Because I posted it like maybe – I posted it up more than one time just for them don't forget." *Id.* at 39-40. Officer Phillips posted it "maybe three times basically, you know. Until, you know, your (unintelligible), you know, this element now, you know, suitable enough to go. Because they supervisor, they do all the evaluation." *Id.* at 40. It is difficult for the court to even discern what this testimony means, let alone whether it would tend to show deliberate indifference. It seems to support only Plaintiff's contention of a delay in treatment, an allegation which fails because Plaintiff has not shown any injury attributable to the "delay."

For the foregoing reasons, the court finds that Plaintiff has failed to proffer sufficient evidence from which a jury could conclude that he suffered a constitutional violation at the hands of Defendants.

Even if the court were to conclude that Plaintiff presented sufficient evidence to create a jury question on the issue of deliberate indifference to medical needs, the court would find that the officers were entitled to qualified immunity. The officers would not have had "fair notice" that their alleged treatment of Plaintiff was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002). The court has located no case law that would indicate that providing

antibiotic cream, pain medication, hot towels, and hot showers for several days and waiting

until the detainee developed a fever to call emergency medical services exhibits deliberate

indifference.    The court also cannot conclude that Defendants' actions fall within a situation

of "obvious clarity" of a constitutional violation.    *See Vinyard v. Wilson*, 311 F.3d 1340,

1350-52 (11th Cir. 2002) (quoting *Hope*).    Accordingly, the court finds that the officers are

protected by qualified immunity, and the court GRANTS Defendants' motion for summary

judgment on Plaintiff's deliberate indifference to medical needs claim.

### B.    Equal Protection

The source of Plaintiff's equal protection claim is difficult to discern.    Plaintiff

appears to argue that he did not receive adequate medical treatment in jail because prisoners

are a disfavored class.    The law, however, does not recognize "prisoners" as a class subject to

heightened protection under the equal protection clause.    *See Rivera v. Allin*, 144 F.3d 719,

727 (11th Cir. 1998) (quoting with approval holding that prisoners are not a suspect class).

Therefore, the court GRANTS Defendants' motion for summary judgment as to Plaintiff's

equal protection claim.

### C.    Municipal Liability

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court

held that municipalities (and other local government entities) are "persons" within the

meaning of 42 U.S.C. § 1983. The Court, however, consistently has declined to hold

municipalities liable under a theory of respondeat superior.    *See, e.g., Pembaur v. Cincinnati*,

AO 72A
(Rev.8/82)

475 U.S. 469, 479 (1986).   Rather, a plaintiff must demonstrate a municipal "policy" or

"custom" that caused the plaintiff's injury in order to establish a municipality's liability.   *See*,

*e.g.*, *Canton v. Harris*, 489 U.S. 378, 389 (1989).   The plaintiff must also show that "through

its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."

*Board of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).   To impose

liability on the City of East Point for violating a constitutional right under section 1983,

Plaintiff must show (1) that his constitutional rights were violated; (2) that the City of East

Point had a policy or custom that constituted a deliberate indifference to her constitutional

right; and (3) that the violation was caused by the policy or custom.   *See Canton*, 489 U.S. at

388.

In *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999), the court further explicated the

standard for establishing municipal liability.   "[A] plaintiff seeking to impose liability on a

municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the

plaintiff's injury."   *Id.* at 1105 (quotations and citations omitted).   "A custom is a practice that

is so settled and permanent that it takes on the force of law."   *Id.*   "To establish a policy or

custom, it is generally necessary to show a persistent and wide-spread practice.   Moreover,

actual or constructive knowledge of such customs must be attributed to the governing body

of the municipality."   *Id.*   "A plaintiff must show that the municipal action was taken with the

requisite degree of culpability, i.e., that the municipal action was taken with 'deliberate

11

indifference' to its known or obvious consequences." *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000).

Plaintiff contends that it should not be up to the discretion of the correctional officers to determine whether to call a nurse or to put a prisoner's name on the list for the nurse to see. Plaintiff also argues that Defendants' policy of not having a full-time nurse caused his constitutional injury. Even if Plaintiff could show he suffered a constitutional injury, Plaintiff has not proffered evidence to show that the City of East Point had a policy that encouraged deliberate indifference or that such a policy caused Plaintiff's constitutional injury. Plaintiff has proffered no evidence at all to show that the City of East Point has a policy or custom of giving correctional officers discretion to place a prisoner's name on a list for the nurse to see. Plaintiff has not proffered any evidence to show that the City of East Point Jail lacks a full-time nurse. Beyond that, Plaintiff has not attempted to show that these alleged customs or policies led to his "injury." For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment on municipal liability.

### D.  State Law Claims

#### 1.  Intentional Infliction of Emotional Distress

In Georgia, to succeed on a claim of intentional infliction of emotional distress, Plaintiff must prove (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *See Phinazee v. Interstate Nationalease, Inc.*, 237 Ga. App. 39,

12

39-40 (1999).    Whether the conduct alleged is egregious enough to sustain a claim of

intentional infliction of emotional distress is a question of law.    *Id.*    Georgia courts have

determined that:

> [i]t has not been enough that the defendant has acted with an intent which is
> tortious or even criminal, or that he has intended to inflict emotional distress,
> or even that his conduct has been characterized by malice, or a degree of
> aggravation that would entitle the plaintiff to punitive damages for another tort.
> Liability has been found only where the conduct has been so outrageous in
> character, and so extreme in degree, as to go beyond all possible bounds of
> decency, and to be regarded as atrocious, and utterly intolerable in a civilized
> community.

*Id.* (citations and quotations omitted).  In *Jarrard v. United Parcel Service, Inc.*, 242 Ga. App.

58, 62 (2000), where an employer gave an employee a harsh performance evaluation on the

day the employee returned from extended psychiatric care and continued the evaluation

despite the employee's tearful requests for postponement, the court of appeals did not find

outrageous conduct, despite the fact that plaintiff alleged malicious motivation of the

employer because of the employee's prior complaints about transfers.    *Id.* at 148.    *See also*

*Fox v. Ravinia Club, Inc.*, 202 Ga. App. 260 (1991) (finding no outrageous conduct where

plaintiff's supervisor spoke to her in a "hostile, intimidating and abusive manner" and gave her

false reasons for termination).

Plaintiff has not alleged any facts from which a jury could conclude that Defendants

are liable for intentional infliction of emotional distress.    Therefore, the court GRANTS

Defendants' motion for summary judgment on this claim.

13

2.      Gross Negligence

O.C.G.A. § 51-1-4 defines gross negligence as:   "In general, slight diligence is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances.   .  .  .    The absence of such care is termed gross negligence."   *Id*.    For the same reasons that the court found that Defendants were not deliberately indifferent to Plaintiff's medical needs, the court finds that Defendants were not grossly negligent.    Therefore, the court GRANTS Defendants' motion for summary judgment on Plaintiff's gross negligence this claim.

Because the court finds that Plaintiff has failed to proffer evidence from which a jury could conclude that Defendants were grossly negligent or intentionally inflicted emotional distress, the court need not consider Plaintiff's claim for punitive damages and Defendants' official immunity.

## III.    Conclusion

The court GRANTS Defendants' motion for summary judgment [52-1].   The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

14

**IT IS SO ORDERED** this 11th day of July 2006.


                               s/ J. Owen Forrester
                                   J. OWEN FORRESTER
                  SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)